## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bryan R. Mudrich,                                    Civ. No. 11-1229 (JRT/JJK)

        Plaintiff,

v.                                                   **REPORT AND RECOMMENDATION**

Wal-Mart Stores, Inc.,

        Defendant.

Bryan R. Mudrich, 15001 Greenhaven Dr. #231, Burnsville, MN 55306, *pro se.*

Stephanie D. Sarantopoulos, Esq., and Reagan W. Oden, Esq., Littler Mendleson, P.C., counsel for Defendant Wal-Mart Stores, Inc.

## INTRODUCTION

In Plaintiff's Amended Complaint, he alleges that Defendant wrongfully terminated his employment based on his age and gender under of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). (Doc. No. 14, Am. Compl.) Plaintiff also alleges that Defendant violated the Minnesota Human Rights Act ("MHRA"), specifically Minnesota Statutes § 363A.08, subd. 2. (*Id.*) This matter is before the Court on Defendant's Motion to Dismiss. (Doc. No. 3.) The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.

For the reasons stated below, this Court recommends that Defendant's motion be granted in part.

## BACKGROUND

Plaintiff Bryan Mudrich worked for Defendant, Wal-Mart Stores, Inc. ("Walmart"), at Store #3513, located in Shakopee, Minnesota.  (Doc. No. 16, Affidavit of Byran R. Mudrich ("Mudrich Aff.") ¶ 2;[1] Am. Compl. ¶ 2.)  His job title was "Service Writer," and his responsibilities included writing and servicing orders for oil changes, new tires, tire rotations, and other automobile services.  (Mudrich Aff. ¶ 3.)  In the course of his employment, Plaintiff and his colleagues used a handheld PC product scanner; they needed to be logged into the PC product scanner to write service orders.  (Mudrich Aff. ¶¶ 4, 5.)  After using a product scanner to write an order, the employee is automatically logged out after approximately two minutes.  (Mudrich Aff. ¶ 5.)  When an employee is logged into a PC product scanner, other employees are not supposed to write orders on that PC product scanner.  (*Id.*)  In addition, employees are not supposed to login to PC product scanners or use them to write orders when they are "clocked out of work."  (Mudrich Aff. ¶ 7.)

---

[1]     In his Amended Complaint, Plaintiff references his affidavit, which was filed separately.  (*See* Doc. Nos. 14, 16.)  Due to the liberal pleading standard for *pro se* plaintiffs, the Court will consider Plaintiff's Affidavit incorporated into the Amended Complaint.  Therefore, all the facts alleged in the Amended Complaint and Plaintiff's Affidavit will be assumed as true for the purposes of this motion.

Plaintiff alleges that on April 3, 2010, one of Plaintiff's colleagues, Service Manager Catherine Kinnunen, was "clocked out of work" but wrote a service order for a Jeep Cherokee on the PC product scanner that Plaintiff was logged into.  (Mudrich Aff. ¶¶ 8–9.)  Kinnunen also allegedly used the same PC product scanner to write a service order for a tire rotation and balancing on a silver Chevrolet.  (Mudrich Aff. ¶ 12.)  According to Plaintiff, Kinnunen approved the order and then drove the vehicle in for service.  (*Id.*)  Mudrich then "cashed out" the service orders at a charge of $0.00.  (Mudrich Aff. ¶ 14.)

The next day, Kinnunen apparently accused Plaintiff of writing the two $30.00 service orders at a charge of $0.00.  (Mudrich Aff. ¶ 16.)  The accusation was made to Regina Gilmore, whose job title was "[A]ssistant [M]anager."  (*Id.*)  Plaintiff protested and asserted that Kinnunen had actually written the service orders he was accused of writing, but Kinnunen denied writing them.  (Mudrich Aff. ¶ 17.)  At that time, Gilmore stated that she would review the security camera footage and contact Plaintiff later.  (Mudrich Aff. ¶ 18.)

On April 9, 2010, Gilmore and Wiley Marcelouse, Plaintiff's Support Manager, told Plaintiff that he was being given a "D-day"[2] and that he should not

---

[2]      Plaintiff explains that Walmart's discipline procedure operates as follows: ". . . [A]n employee is first verbally coached for any wrong doing [sic] and sent back to work.  For a second offence an employee is written up and sent back to work.  For a third offence an employee is given a D-day[.]"  (Mudrich Aff. ¶ 20.)  A "D-day" requires that the employee take the next day off and return to work the

(Footnote Continued on Next Page)

come to work on April 10th.  (Mudrich Aff. ¶ 19.)  Plaintiff complied and returned

to work on April 11, 2010.  (Mudrich Aff. ¶ 21.)  On April 11, 2010, however, two

managers—Ahmed Jama and Matt Caulkins—refused to complete the "D-day"

paperwork because Plaintiff had not "received coaching or a write up on this

issue[.]"  (Mudrich Aff. ¶¶ 21–22.)  Nevertheless, on April 30, 2010, Gilmore and

Marcelouse told Plaintiff that his employment with Walmart was terminated.

(Mudrich Aff. ¶ 24.)  At that time, Plaintiff again asserted that he had not stolen

anything, and that Walmart's disciplinary procedures were not being followed.

(*Id.*)

Walmart officially terminated Plaintiff on May 6, 2010.  (Mudrich Aff., Ex. 2.)

On August 26, 2010, Plaintiff filed a Charge of Discrimination with the Minnesota

Department of Human Rights ("MDHR").  (Mudrich Aff., Ex. 3.)  In his Charge,

Plaintiff claimed he was discriminated against on the basis of his sex in violation

of Title VII.  (*Id.*)  The Charge did not contain an allegation of age discrimination.[3]

 (*Id.*)  On February 17, 2011, the MDHR dismissed Plaintiff's Charge and issued a

Notice of Right to Sue.  (Mudrich Aff., Ex. 4.)

---

(Footnote Continued from Previous Page)
following day with a "letter of admission, an apology, and a fix it plan."  (*Id.*)
Plaintiff had not been the subject of "previous discipline actions" prior to April 9,
2010.  (Mudrich Aff. ¶ 23.)

[3]     Plaintiff was born in 1959.  (Am. Compl. ¶ 9.)

On May 11, 2011, Plaintiff, acting *pro se*, filed his Complaint with this Court.  (Doc No. 1, Compl.)  On September 19, 2011, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Doc. No. 3, Def.'s Mot. to Dismiss.)  On October 3, 2011, Plaintiff filed papers in response to the motion, including an Amended Complaint whereby he more clearly identified the state and federal statutes under which he was seeking relief.  (Doc. Nos. 16–18; Am. Compl. ¶¶ 3, 10, 11, 29.)  Defendant's reply memorandum set forth Defendant's arguments for dismissal of Plaintiff's age discrimination and wrongful termination claims asserted in the Amended Complaint.  (Doc. No. 21, Def.'s Reply Mem. in Supp. of its Mot. to Dismiss 1.)

## DISCUSSION

### I.     Standard of Review

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the Plaintiff.  *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders,

materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 545.  Whether a complaint states a claim is a question of law.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  *Neitzke v. Williams*, 409 U.S. 319, 326 (1989).  In addition, this court notes that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions.").

6

## II.   Analysis[4]

In his Amended Complaint, Plaintiff asserts that he was subject to employment discrimination and wrongful termination on the basis of age.  (Am. Compl. ¶ 3.)  Plaintiff is bringing these claims under both the ADEA and the MHRA.  (Mudrich Aff. ¶ 27, 29.)  Defendant argues that the ADEA claim cannot proceed because Plaintiff did not exhaust his administrative remedies.  Defendant also argues that the MHRA claim cannot proceed because the MHRA's one year limitations period had expired before Defendant was properly served with the Complaint.  Plaintiff did not address these issues in his responsive papers.

### a.   Age Discrimination under the ADEA

In order to bring a claim under the ADEA, a plaintiff must exhaust his administrative remedies.  *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005) (citing *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 835 (8th Cir. 2002)).  And in order to meet the administrative exhaustion requirement, an aggrieved employee must file a Charge of Discrimination with the Equal

---

[4]   In Defendant's Motion to Dismiss, it originally requested dismissal of Plaintiff's sex discrimination claims.  Based on the additional facts in Plaintiff's Amended Complaint and Affidavit, Defendant now states that it is no longer pursuing the motion to dismiss with respect to Plaintiff's sex discrimination claims. (*See* Doc. No. 21, Def.'s Reply Mem. in Supp. of its Mot. to Dismiss 1 ("Walmart no longer pursues its motion to dismiss Mudrich's claim of gender/sex discrimination.").)  Because Defendant has withdrawn its Motion to Dismiss with respect to Plaintiff's sex discrimination claims, this Court will decide the motion with respect to Plaintiff's age discrimination based claims only.

Employment Opportunity Commission ("EEOC") within the limitations period defined by the ADEA. *See Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327 (8th Cir. 1995) ("This administrative deadline is not a jurisdictional prerequisite; rather, it is treated like a statute of limitations."); *See also Anderson v. Unisys Corp.*, 47 F.3d 302, 304 n.3 (8th Cir. 1995) (noting that the limitations period under the ADEA is 300 days for cases arising in Minnesota). The purpose of this process is to allow the EEOC an opportunity to correct alleged discrimination through a more informal process, and it also functions to provide the employer notice of the claim. *Kloos v. Carter-Day Co.*, 799 F.2d 397, 400 (8th Cir. 1986).

Here, the parties agree that Plaintiff filed a timely Charge of Discrimination. But Defendant argues that Plaintiff's age discrimination claim asserted in his Amended Complaint under the ADEA must be dismissed because Plaintiff's Charge alleged only sex discrimination, and made no mention of age discrimination. This Court agrees. Plaintiff's age discrimination claim is not "like or reasonably related" to his Charge of sex discrimination. *See Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge."). If the administrative charge and the compliant allege discrimination based on different immutable characteristics, the claims are not reasonably related. *See Sallis v.*

8

*Univ. of Minn.*, 322 F. Supp. 2d 999, 1004 n.1 (D. Minn. 2004) ("Age and race are distinct protected categories and the exhaustion of remedies with regard to one does not create a right to sue for the other."), *aff'd*, 408 F.3d 470 (8th Cir. 2005). Therefore, this Court concludes that Plaintiff has not exhausted his administrative remedies as to his age discrimination based claims and these claims asserted under the ADEA are barred.

### b.    Age Discrimination under the MHRA

The MHRA does not require administrative exhaustion, but if a plaintiff chooses a civil action over an administrative remedy, the civil action must be brought within one year of the alleged discrimination.  Minn. Stat. § 363A.28 subd. 3; Minn. Stat. § 363A.33.  And the limitations period begins to run on the date the discriminatory act occurs.  *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 699–700 (Minn. 1996).  In the case of a MHRA claim brought in federal court, the statute of limitations is tolled when a complaint is served on a defendant.  *Quasius v. Schwan Food Co.*, No. 08-CV-575 (JNE/JJG), 2008 WL 4933764, at *2–3 (D. Minn. Nov. 14, 2008).

Giving Plaintiff's Amended Complaint and Affidavit the most generous possible reading, the alleged discriminatory act that forms the basis of the MHRA age discrimination claim occurred on May 6, 2010, when Defendant officially ended Plaintiff's employment.  (Mudrich Aff., Ex. 2)  Plaintiff filed his federal action on May 11, 2011 (Doc. No. 1), and Defendant was served with the

Complaint on August 26, 2011.  (Doc. No. 6, Affidavit of Kahla M. Bunde ("Bunde Aff.") ¶ 4, Ex. C.)  Therefore, even if the statute of limitations began to run on the date Plaintiff was terminated, May 6, 2010, and the statute tolled on the date the Complaint was filed, May 11, 2011, his MHRA claim for age discrimination would still be barred because the Complaint was filed more than one year after Defendant officially ended Plaintiff's employment.  Thus, this Court concludes that Plaintiff's age discrimination based claims are barred under the MHRA as well.

### c.    Wrongful Termination

Defendant also argued for the dismissal of "[Plaintiff's] purported claim for wrongful termination."  (Doc. No. 21, Def.'s Reply Mem. in Supp. of its Mot. to Dismiss, 2.)  In his Amended Complaint, which included boxes Plaintiff could check off to indicate which statutes that his employment discrimination claim was based on, in addition to checking "Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin" and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et. seq.*, for employment discrimination on the basis of age (age 40 or older)," Plaintiff checked "other," and inserted the following description:

> Wrongful termination when Wal-Marts Service manager Catherine Kinnunen used the handheld service order scanner that was logged in under plaintiff's name without login in with her own Id badge barcode to write a customer order and charged the customer $0.00 for a $30.00 rotation and balance on a silver Chevrolet car.

10

(Am. Compl. ¶ 3.)  This Court interprets Plaintiff's Amended Complaint to not allege any separate and distinct "wrongful termination" claim.  Rather, Plaintiff appears to be claiming wrongful termination based on age and/or gender discrimination under state and federal statutes.  If Plaintiff were making a separate claim for wrongful termination under Minnesota common law, the claim would fail.[5]  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Because the sex discrimination claims remain in this case, Plaintiff's wrongful termination claim based on the alleged sex discrimination survives as well, and Defendant's Motion to Dismiss in this respect is denied.  However, because the age discrimination claims are barred, any wrongful termination claim based on the alleged age discrimination must be dismissed.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[5]   Minnesota courts have long recognized the at-will employment doctrine, which holds that employers have the legal right to terminate employment with or without notice, at any time, and without cause.  *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983).  And while the Minnesota Supreme Court has affirmed the existence of a common law wrongful termination cause of action, *Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452, 455–56 (Minn. 2006), this narrow exception to the at-will employment doctrine does not apply here.  The exception extends only to those who are fired because of their refusal to violate the law.  *Id.*  Plaintiff does not allege that his refusal to violate the law was the reason his employment was terminated.

1.      Defendant Wal-Mart's Motion to Dismiss (Doc. No. 3), be **GRANTED**

**IN PART** and **DENIED IN PART**.  The motion is **GRANTED** with respect to

Plaintiff's age discrimination claims only.  Plaintiff's age discrimination claims are

dismissed with prejudice.  The motion is **WITHDRAWN** with respect to Plaintiff's

sex discrimination claims, and therefore Plaintiff's sex discrimination claims

remain.  The motion is **DENIED** with respect to Plaintiff's wrongful termination

claim to the extent that it is based on sex discrimination, but **GRANTED** with

respect to Plaintiff's wrongful termination claim to the extent that it is based on

age discrimination.


Date: November 18, 2011               *s/ Jeffrey J. Keyes*
                                      JEFFREY J. KEYES
                                      United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**December 2, 2011**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure to
comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C.
§ 636 to review a transcript of the hearing in order to resolve all objections made
to this Report and Recommendation, the party making the objections shall timely
order and file a complete transcript of the hearing within **ten days** of receipt of the
Report.